917 A.2d 269 (2007)
391 N.J. Super. 102
Christina HAND, Plaintiff-Appellant,
v.
John HAND, Jr., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 30, 2007.
Decided March 7, 2007.
*270 Anthony J. Harvatt, II, Cape May Courthouse, for appellant.
Cooper Levenson April Niedelman & Wagenheim, Atlantic City, for respondent (Howard E. Drucks, on the brief).
Before Judges KESTIN, GRAVES and LIHOTZ.
The opinion of the court was delivered by GRAVES, J.A.D.
The parties are divorced with two children, John and Tyler. Plaintiff Christina Hand appeals from an order of April 28, 2006, denying her motion to transfer custody of their two sons from their father to herself. Plaintiff contends the trial court erred when it denied her application to change custody without holding a plenary hearing. We affirm.
Prior to finalizing their divorce, the parties and their attorneys signed a consent order dated May 1, 2001. The consent order stated that John and Tyler were in the custody of their father pursuant to a prior order of February 5, 2001, and it provided that plaintiff was to make weekly child support payments to defendant. Another consent order, dated June 20, 2001, noted that during mediation, the parties had agreed upon a "Family Mediation Agreement/Parenting Plan" (Parenting Plan), dated June 5, 2001, and the consent order required the parties to comply with the Parenting Plan pending further order of the court. Pursuant to the Parenting Plan, which was signed by the parties and their attorneys, the boys are to reside with their father. Plaintiff is entitled to visitation on weekends, and the parties agreed to divide holidays and summer weeks when the boys are not in school. On October 5, 2001, the court denied plaintiff's motion to set aside the consent order dated June 20, 2001.
When the parties were divorced on November 5, 2001, John was eight years old and Tyler was six years old. Pursuant to their "Consent Dual Final Judgment of Divorce," the parties agreed to incorporate their Parenting Plan. Thus, the divorce judgment states that defendant "shall have custody of the two unemancipated children born of the marriage" and that plaintiff "shall continue to pay child support" for the two children.
Preliminarily, we note that plaintiff urged the court to transfer custody of the two boys without the benefit of an investigation by the Family Division (R. 5:8-1), without an investigation by a neutral expert appointed by the court (R. 5:3-3(e)), without a report by a guardian ad litem (R. 5:8B), and without referral to the mediation program (R. 1:40-5), where the parties originally resolved the custody issue. In addition, plaintiff's motion to change custody did not request discovery, and plaintiff did not ask the court to hold a plenary hearing. Plaintiff simply asked for a change of custody. Nevertheless, because of our parens patriae responsibility to protect the welfare of children, we will consider plaintiff's present contention that the trial court erred in denying her motion to change custody without conducting a plenary hearing.
In custody cases, it is well settled that the court's primary consideration is the best interests of the children. Kinsella v. Kinsella, 150 N.J. 276, 317, 696 A.2d 556 (1997). The court must focus on the "safety, happiness, physical, mental and moral welfare" of the children. Fantony v. Fantony, 21 N.J. 525, 536, 122 A.2d 593 (1956). See also P.T. v. M.S., 325 N.J.Super. 193, 215, 738 A.2d 385 (App. Div.1999) ("In issues of custody and visitation `[t]he question is always what is in the best interests of the children, no matter *271 what the parties have agreed to.'") (internal quotation marks omitted and alteration in original) (quoting Giangeruso v. Giangeruso, 310 N.J.Super. 476, 479, 708 A.2d 1232 (Ch.Div.1997)). Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c). V.C. v. M.J.B., 163 N.J. 200, 227-28, 748 A.2d 539, cert. denied, 531 U.S. 926, 121 S.Ct. 302, 148 L.Ed.2d 243 (2000).
A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children. Borys v. Borys, 76 N.J. 103, 115-16, 386 A.2d 366 (1978); Sheehan v. Sheehan, 51 N.J.Super. 276, 287, 143 A.2d 874 (App. Div.), certif. denied, 28 N.J. 147, 145 A.2d 358 (1958). A plenary hearing is required when the submissions show there is a genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute. Shaw v. Shaw, 138 N.J.Super. 436, 440, 351 A.2d 374 (App.Div.1976); see Lepis v. Lepis, 83 N.J. 139, 159, 416 A.2d 45 (1980) (holding "a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary," and noting that "[w]ithout such a standard, courts would be obligated to hold hearings on every modification application"). See also R. 5:8-6 (requiring the court to "set a hearing date" if it "finds that the custody of children is a genuine and substantial issue").
In some cases, there is clearly a need for an evidentiary hearing to resolve custody or parenting time issues. See, e.g., P.T., supra, 325 N.J.Super. at 215, 222, 738 A.2d 385 (evidentiary hearing required prior to entry of order of joint custody and unsupervised visitation with father who had been accused of sexually abusing the child); Mackowski v. Mackowski, 317 N.J.Super. 8, 721 A.2d 12 (App. Div.1998) (holding that father's motion to transfer custody of sixteen-year-old daughter, who repeatedly expressed preference to live with father, should not have been decided without a plenary hearing); Fusco v. Fusco, 186 N.J.Super. 321, 452 A.2d 681 (App.Div.1982) (holding that plenary hearing was necessary to determine nature and extent of visitation to be granted to father who was serving a thirty-two-year prison term for first-degree murder). See also Dorfman v. Dorfman, 315 N.J.Super. 511, 518, 719 A.2d 178 (App.Div.1998) (noting that detailed and documented evidence demonstrating that "child was experiencing significant behavioral problems" warranted court intervention "to at least order an investigation of the problem"). In many cases, however, where the need for a plenary hearing is not so obvious, the threshold issue is whether the movant has made a prima facie showing that a plenary hearing is necessary. This is such a case.
On April 28, 2006, both parties were present in court with their attorneys when plaintiff's motion to transfer custody was argued. The transcript of the proceeding confirms that the motion judge conscientiously considered the parties' submissions, and he took the opportunity to direct questions not only to counsel but also to the litigants. The trial court ultimately concluded that plaintiff had failed to establish a prima facie case that there was a genuine and substantial factual dispute regarding the welfare of the children, and we are satisfied the record adequately supports that determination.
In support of her motion to change custody, plaintiff asserted that "during the time we were married the [d]efendant's friends and social life came first and family second." Plaintiff also certified that "[d]efendant is an alcoholic. He drinks on a daily basis and frequents bars. There are *272 many times that the children are left to care for themselves while the [d]efendant is out with his friends either fishing or hanging out in bars." Plaintiff also advised the court that defendant is "irresponsible," and she certified that during the marriage, defendant "never paid any taxes" after he started his own business that was put in plaintiff's name "for tax purposes."
In reply, defendant certified: "I am not an alcoholic nor do I drink in excess. I do not frequent bars. I have never had a DUI, or other problems indicating an alcohol problem." And defendant certified:
I have not changed. If she thought I was such a bad parent during our marriage why has she entrusted me with the care and custody of the boys since shortly after our separation. She claims . . . that in 2001 it "became evident to her almost immediately" that . . . the boys were not happy and not receiving proper care, yet she took no action to obtain custody in years-since 2001. Christina knows full well that the boys are happy, well-adjusted, well-rounded, respectful young men. They are growing up in a loving, structured home. In our home there is love, honesty and understanding. The boys have a routine and responsibilities and are thriving.
. . . .
I am the parent who helps the boys with their homework and school projects on a daily basis. I am the parent who attends "meet the teacher night", art night and all parent teacher conferences consisting of 2 conferences per year for both Johnny and Tyler. Christina has never attended one single parent teacher conference. She has never met the boys' teachers. I attend every one of [the] boys school plays and concerts; never missing a single one. Johnny has participated in the Choir and he has had recitals, and has participated in a special Christmas Choir. Christina has only attended one choir show, at Christmas.
. . . .
Only on rare occasions is Tyler left in John's care and only for a short while after school. The boys are never left alone for long periods of time. I am also accessible to both boys by cell phone at all times. If I have to work late and if Ms. Beale [defendant's long-term, live-in girlfriend] is not available, I have competent baby sitters who are with the boys. I have both sides of my family in the immediate area to help with the boys.
Defendant also provided the court with the boys' current report cards and a letter from the children's school principal. John's seventh-grade report card contained six As and five Bs. Tyler's fifth-grade report card contained four As, four Bs, and three Cs. The letter from William F. Gussie, Ed.D., dated April 13, 2006, reads as follows:
Please be advised that I have known Mr. John Hand who resides . . . in Brigantine, NJ for four years. His two sons, John and Tyler, attend the Brigantine North Middle School. He has had custody of both boys and I find him to be a good parent. The[] boys are well-adjusted, good students, and are well cared for. Mr. Hand has always attended parent conferences, and is available to meet with the boys' teachers whenever necessary.
If you have any additional questions don't hesitate to contact my office.
In a subsequent certification, plaintiff stated she was concerned for the "children's physical and emotional well-being," but she failed to provide any additional facts or circumstances to explain the reasons for her concerns, she failed to address defendant's claim he had not changed, and *273 she failed to explain why she had repeatedly agreed during the divorce proceedings that defendant should have sole custody of the children. This did not go unnoticed by the motion judge, who commented: "I have a certification [from defendant] saying these boys are doing fine. I have a reply that doesn't even address that."
During the court proceeding on April 28, 2006, the motion judge questioned plaintiff's apparent lack of involvement in the children's school life, and her attorney acknowledged she participated "[o]nly when she's told. Only when she's been contacted. Only when she's been given dates or times to go." Plaintiff offered no explanation for her absence from parent-teacher conferences and school activities, either at oral argument or in her two certifications. The motion judge also questioned defendant about his employment, and defendant stated he had been self-employed for approximately ten years and he had been working "for the same people now for three years."
In his response to plaintiff's motion, defendant asserted, "plaintiff has not maintained a stable residence. She has lived in 5 different houses and 5 different cities since our divorce. Now she is in a winter rental in Ocean City." During oral argument, plaintiff's attorney advised the court that plaintiff is employed by the post office, and that she moved because "the post office has transferred her." Nevertheless, the court observed that if plaintiff were to have custody of the boys, it would be disruptive for them to be moving from one school system to another.
In her certifications, plaintiff also alleged defendant might be physically abusing the boys:
The children have also told me many times that their father becomes angry at them for no reason, and is often in a "bad mood" and sends them to their room frequently. They also live in fear of getting in "Big Trouble" with their father. I also fear that from what the boys tell me that there may be some physical abuse in their father's home.
Defendant denied the boys were ever physically abused, and he explained his reasons for establishing "limits and boundaries":
My sons do not fear me. I have certainly never physically abused them. "Big Trouble" means the boys get sent to their rooms (usually for about one hour). Raising preteen boys is not an easy job and I feel I need to set a solid foundation for them. I need to establish limits and boundaries, such as curfews and study hours. I am trying to guide them toward choices that will keep them safe. The boys may fight with me [on] some decisions, but they usually realize that the limits placed on them are a sign of love. The upcoming teen[] years may be difficult. They need to know ground[] rules, what is right and what is wrong. They need responsibilities to learn the skills to cope and to make informed decisions about problems important to them  dealing with the stresses of homework, making good friends, and contending with mounting peer pressure. With issues of violence, unsafe sex, and drug abuse facing young people earlier and earlier, I need our preteen boys to be able to make thoughtful decisions about the problems that they may be facing.
In support of her motion to change custody, plaintiff provided the court with a three-page letter from Linda Chambers (Chambers), a licensed clinical social worker, dated October 19, 2005. Chambers met with the children on three occasions in August 2005. Plaintiff did not advise defendant she was taking the boys to see *274 Chambers, and, at plaintiff's request, Chambers did not speak to defendant, defendant's live-in girlfriend, the children's teachers, or any other person involved in the children's lives. In her letter, Chambers indicates that John, who was twelve at the time, told her he frequently argues with his father "about chores and household work." John also advised that his father "gets angry over nothing," and the boys are frequently sent to their room.
According to Chambers, Tyler indicated that his father "frequently yells at him," and "sometimes hits him with an open hand on his back or on his buttocks when he doesn't listen." Tyler told Chambers he "loves his father and is fearful of hurting his feelings, but he thinks he would be better off with his mother." Chambers also reported that Tyler's mother described him as "high strung" and "anxious," and that Tyler has difficulty "adjusting to changes." Tyler's mother also advised Chambers "that it can be challenging parenting Tyler and gaining his cooperation and compliance at times."
In her letter to plaintiff's attorney, Chambers stated "John and Tyler were spending an extended visit with their mother over this past summer and have been asking that they be able to come and live with her." Chambers concluded that the boys' "unhappiness with their living situation with the natural father appears to be largely connected to his abuse of alcohol and resulting behaviors and actions."
The trial court's findings and conclusions included the following:
[H]er allegations are fairly severe. He's an alcoholic, drinks in bars every day. He may physically abuse the children. He leaves the children alone.
. . . .
And then I look and see what's going on in the children's lives. . . .
. . . .
[Y]ou're not an A-B student . . . in school if your father abuses you, leaves you alone, your father's an alcoholic. That's not what happens. . . . [T]he school is the first line of defense. They understand if there's some behavior that indicates that something's going wrong at home.[1]
. . . .
I have to make a prima facie finding that there's any substance to [plaintiff's] allegations.
. . . .
Your client has given me absolutely nothing for me to conclude that Mr. Hand is doing anything other than an exemplary job as a father taking care of these children. He attends all their activities. He goes to parent-teacher conferences. The children are A-B students. They're well adjusted in school. The principal speaks highly of them. Why in the world would I want to change that?
. . . .
And there's nothing to indicate to me they're also not doing great at home. . . . other than her word saying they're not. . . . I have . . . all these . . . allegations, with no substance behind them. And I don't think that's enough. . . .
. . . .
[S]he makes statements, he's an alcoholic, that he physically abuses these children. And she just makes statements.
. . . .
[I]'m not satisfied that she has set forth a prima facie case where I should do *275 anything or need to do anything other than deny your request for custody. These boys are doing well. They apparently are doing well at home. They . . . clearly, are doing well in school, which is an indication as to how well they're doing at home.
She has not been actively involved in their school life and there's been no reason given in her certifications why she hasn't. Mr. Hand has been actively involved. I don't see any reason to change what, apparently, is a pretty good situation.
Family Part judges are frequently called upon to make difficult and sensitive decisions regarding the safety and well-being of children. Because of their special expertise in family matters, we do not second-guess their findings and the exercise of their sound discretion. See Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998). We recognize "[j]udicial discretion connotes conscientious judgment, not arbitrary action; it takes into account the law and the particular circumstances of the case before the court." Higgins v. Polk, 14 N.J. 490, 493, 103 A.2d 1 (1954). That is precisely what happened here. After carefully reviewing the submissions in light of the applicable law, the trial court correctly concluded there was no need for a plenary hearing because plaintiff failed to establish a prima facie case that circumstances subsequent to the divorce judgment were adversely affecting the welfare of the children. See Barblock v. Barblock, 383 N.J.Super. 114, 127, 890 A.2d 1005 (App.Div.) (stating there was "no reason to . . . compel a plenary hearing that would only disrupt the lives of the parties and their children and be very unlikely to lead to a different outcome"), certif. denied, 187 N.J. 81, 899 A.2d 304 (2006); Pfeiffer v. Ilson, 318 N.J.Super. 13, 14, 722 A.2d 966 (App.Div.1999) (emphasizing "that a plenary hearing is not necessary in every case where removal of children is at issue, but rather only where a prima facie showing has been made that a genuine issue of fact exists bearing upon a critical question such as the best interests of the children").
As indicated by the trial court, plaintiff's claim that the boys might be subject to physical abuse was completely unsubstantiated. And there was little evidentiary support for plaintiff's other conclusory allegations. For example, plaintiff certified that defendant was irresponsible and "that during the time we were married the [d]efendant's friends and social life came first and family second." (Emphasis added.) The parties were divorced on November 5, 2001, however, and behavior predating the Parenting Plan, which was incorporated into the divorce judgment, does not factor into a changed-circumstances analysis. Moreover, it is unlikely plaintiff would have repeatedly agreed to the present custodial arrangement if defendant had not been a loving and caring parent during the marriage.
The motion judge determined that plaintiff failed to prove, even prima facially, it was in the best interests of the children to change custody. That determination is supported by substantial credible evidence in the record and is consistent with controlling legal principles. See Lepis, supra, 83 N.J. at 159, 416 A.2d 45 (noting that conclusory allegations should be disregarded by the court when determining whether a hearing is necessary). Because plaintiff's proofs were insufficient to warrant a plenary hearing, we find no abuse of discretion by the trial court and affirm the order under review substantially for the reasons stated by Judge Baker. Of course, our decision is without prejudice to plaintiff's right to seek relief from the court in the event of subsequent conditions *276 or circumstances affecting the welfare of the children.
Affirmed.
NOTES
[1] The court was apparently referring to the statutory obligation imposed on all school districts to report suspected cases of child abuse to the appropriate law enforcement and child welfare authorities. N.J.S.A. 18A:36-25; N.J.A.C. 6A:16-11.1.