NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4165-11T4

R.K.,

     Plaintiff-Appellant,

v.

F.K.,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

July 28, 2014

APPELLATE DIVISION

Submitted March 24, 2014 — Decided July 28, 2014

Before Judges Yannotti, Ashrafi and Leone.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2254-11.

Brandon L. Martin, attorney for appellant.

Respondent has not filed a brief.

The opinion of the court was delivered by

LEONE, J.S.C. (temporarily assigned).

Plaintiff R.K. (Father) appeals from the Judgment of Divorce which designated defendant F.K. (Mother) as the parent of primary residence.  After a seven-day trial, the court denied relief because it found no substantial change of circumstance, and because it relied on the presumption of custody in N.J.S.A. 2C:25-29(b)(11) of the Prevention of Domestic Violence Act of

1991 (DV Act), N.J.S.A. 2C:25-17 to -33. Because the court misapprehended the roles of both the change of circumstances requirement and the presumption, we vacate and remand.

I.

Father and Mother were married in 2001. They had four children: K.K., born in 2001; A.K., born in 2003; E.K., born in 2004; and R.K., born in 2007.

On August 2, 2008, Mother obtained a temporary restraining order against Father. She alleged an act of harassment. The Family Part entered a final restraining order (FRO) on August 12, 2008. The FRO gave Mother temporary custody of the four children. It gave Father parenting time for specific hours on Wednesdays, Saturdays, and Sundays, and allowed him to communicate with the children by email. As ordered in the FRO, Father underwent anger management counseling.

In November 2008, the court hearing the domestic violence (DV) case amended the FRO, giving Father and Mother joint legal custody and granting Father holiday parenting time. The DV court again amended the FRO in June 2009 to give Father parenting time on alternate weekends from the end of school on Friday until Sunday at 6:00 p.m., on Wednesdays from the end of school until 8:00 p.m., and on holidays.

On July 19, 2010, the DV court held a plenary hearing, denied Father's request for change of custody, and allowed Mother to continue to home-school the children.

Father filed a complaint for divorce in 2011. Prior to trial, Father's expert psychologist, Dr. Donald J. Franklin, interviewed Father, Mother, the four children, and others, did psychological testing, and produced a report. Franklin reported that Mother had "very significant psychological problems," which jeopardized her "emotional stability as a parent," were "likely to interfere with appropriate parental communication with" Father, were "likely to interfere with her parenting," and could have "a very negative effect on her children."

Franklin concluded that "[t]he current situation does not appear to be in the best interests of the children as a long-term plan." Franklin found it inadvisable for Mother to continue home-schooling the children. Franklin also recommended that Father and Mother split residential parenting responsibilities evenly.

The trial court ordered a seven-day divorce trial focused on child custody and schooling. On March 13, 2012, the court issued the judgment of divorce. The court designated Mother the parent of primary residence, continued the existing parenting-time schedule, and provided that the issue of home-schooling

could be revisited only in the year before each child begins high school. The court stated its findings of fact and conclusions of law orally and in a written attachment to the order. Father filed a notice of appeal on April 24, 2012. The trial court issued a written amplification of decision dated May 3, 2012.

## II.

Father argues that the trial court misapplied the legal standard for custody determinations. Specifically, he challenges the court's application of the DV Act's presumption "that the best interests of the child are served by an award of custody to the non-abusive parent." N.J.S.A. 2C:25-29(b)(11). He also complains that the court required "[a] substantial change in circumstances," found no such change, and denied relief on that basis.

We must hew to our standard of review. "Because we review issues of law de novo, we owe no deference to an interpretation of law by the trial court[.]" M.S. v. Millburn Police Dept., 197 N.J. 236, 246 n.10 (2008).

## III.

Here, the trial court applied a changed-circumstances standard to decide the trial itself. However, at a trial to determine custody, "the ultimate judgment is squarely dependent

on what is in the child's best interests." Baures v. Lewis, 167 N.J. 91, 115 (2001).

In Lepis v. Lepis, 83 N.J. 139 (1980), the Supreme Court set forth "the proper procedure for courts to follow on modification motions." Id. at 157. "A prima facie showing of changed circumstances must be made before a court will order discovery[.]" Id. at 157-58 & n.10. "Once the above steps have been completed, the court must decide whether to hold a hearing." Id. at 159.

Thus, Lepis outlined a "two-step process." Crews v. Crews, 164 N.J. 11, 28 (2000). In the first step, the movant "must meet the threshold standard of changed circumstances" to be entitled to discovery and an evidentiary hearing or trial. J.B. v. W.B., 215 N.J. 305, 327 (2013); Crews, supra, 164 N.J. at 28; Miller v. Miller, 160 N.J. 408, 420 (1999). Once the movant makes that prima facie showing, however, the second-step hearing or trial is decided using "the same standard that applies at the time of [an] original judgment of divorce." Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 350 (App. Div. 2009); see Crews, supra, 164 N.J. at 16.

The Lepis two-step process procedure applies to changes in child custody. E.g., Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); Abouzahr v. Matera-Abouzahr, 361 N.J. Super.

135, 152 (App. Div.), certif. denied, 178 N.J. 34 (2003). "The paramount consideration in child custody cases is to foster the best interests of the child." Beck v. Beck, 86 N.J. 480, 497 (1981). Thus, "a motion for a change in custody . . . will be governed initially by a changed circumstances inquiry and ultimately by a simple best interests analysis." Baures, supra, 167 N.J. at 116.

Here, rather than denying a custody hearing for lack of changed circumstances under Lepis's step one standard, the trial court proceeded to the second step under Lepis by holding a custody trial. Holding a custody trial was appropriate. Franklin's report established a prima facie case justifying an evidentiary hearing because it showed "a change of circumstances warranting modification." Beck, supra, 86 N.J. at 496 n.8; N.J. Div. of Youth & Family Servs. v. N.D., 417 N.J. Super. 96, 112 (App. Div. 2010); Sheehan v. Sheehan, 51 N.J. Super. 276, 287 (App. Div.), certif. denied, 28 N.J. 147 (1958); see Lepis, supra, 83 N.J. at 175 (holding that "[t]he party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief"). Father thus was "entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody

order." Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009), certif. denied, 203 N.J. 435 (2010).

Thus, the court was required to determine custody at that trial based solely on the best interests of the children. However, in its decision the court mistakenly relied on the lack of a "substantial change in circumstances." The change of circumstances standard serves to determine whether a trial should be held, not to determine the result of that trial.[1]

IV.

The trial court also erred by relying in this matrimonial proceeding on the presumption used in domestic violence cases. In an initial FRO hearing, the court "may issue an order granting any or all of the following relief," including "(11) An order awarding temporary custody of a minor child." N.J.S.A. 2C:25-29(b). In awarding temporary custody, the DV court "shall presume that the best interests of the child are served by an award of custody to the non-abusive parent." Ibid.

This presumption plays an important role in the initial DV proceedings, which must be conducted expeditiously, and in which

[1] Because the changed-circumstances standard will not be applied on remand, we need not address Father's argument that the trial court's formulation, "a substantial change in circumstances," Voit v. Voit, 317 N.J. Super. 103, 121 (Ch. Div. 1998), differed from the formulation, "a change in circumstances warranting modification," set forth in Beck, supra, 86 N.J. at 496 n.8, and other cases.

custody is only one of many issues. See N.J.S.A. 2C:25-29(b). Further, this presumption reflects the DV Act's finding "that there exists 'a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence.'" J.D. v. M.A.D., 429 N.J. Super. 34, 43-44 (App. Div. 2012) (quoting N.J.S.A. 2C:25-18).

In this case, the DV court awarded Mother temporary custody of the four children in the FRO proceeding in 2008. In the 2012 divorce trial, the trial court assumed that the presumption still governed. The court cited a DV case which upheld an amended FRO. Grover v. Terlaje, 379 N.J. Super. 400 (App. Div. 2005). In Grover, the defendant demanded joint legal custody "only eight months" after he was released from probation imposed after his conviction for possession of a weapon for unlawful purposes and harassment, "apparently stemming from the" domestic violence incident. Id. at 403-04, 409-10. Here, by contrast, the parties have had joint legal custody since 2008, and three and a half years have passed without any domestic violence.

In the DV context, Grover found "the presumption weakens as time passes without any conduct which can be said to jeopardize the 'non-abusive spouse' or the child." Id. at 407. Grover did

not purport to decide whether the presumption applies in a divorce trial.  The DV Act applies the presumption only in "proceedings in which complaints for restraining orders have been filed."  N.J.S.A. 2C:25-29(b).  Except for the amended FRO in Grover, we have applied it only in appeals from initial FROs.  See J.D., supra, 429 N.J. Super. at 37; Mann v. Mann, 270 N.J. Super. 269, 273-74 (App. Div. 1993).

A different statutory scheme applies to custody determinations in divorce trials.  They are governed by N.J.S.A. 9:2-4, which addresses domestic violence as one of several factors requiring consideration.  See Oliver v. Ambrose, 152 N.J. 383, 398 (1998).

> In making an award of custody, the court shall consider but not be limited to the following factors:  the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or

subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[N.J.S.A. 9:2-4 (emphasis added).]

In considering these N.J.S.A. 9:2-4 factors in a divorce proceeding, "the trial court must remain mindful of the need for the continued protection of domestic violence victims when crafting orders, particularly those involving parenting time." Finamore v. Aronson, 382 N.J. Super. 514, 521, 523 (App. Div. 2006). At the same time, the court must consider the Legislature's determination that "[t]he child's 'best interest' is fostered when both parents are involved with the child, assuring [the child] of frequent and continuing contact with both parties." Id. at 523 (quoting N.J.S.A. 9:2-4). "While striking this balance the court must keep sight of the benchmark of the best interest of the child." Ibid. Thus, the history of domestic violence, like parental safety, "is one consideration" in determining the best interests of the child, not a presumption that predetermines that key issue. See id. at 523-24.

Moreover, the presumption under N.J.S.A. 2C:25-29(b)(11) fulfills its function by influencing the determination of custody in the initial FRO proceeding. As set forth above, any subsequent change in custody requires a prima facie showing of

"a change in circumstances warranting revision of custody or parenting time in the best interests of the child as defined in N.J.S.A. 9:2-4," N.D., supra, 417 N.J. Super. at 112, and then proof at a hearing that the child's "best interests are served by modification of the existing custody order," Faucett, supra, 411 N.J. Super. at 111.  If those showings are made, even after consideration of "the history of domestic violence," N.J.S.A. 9:2-4, re-application of the presumption to change the result would dictate a decision that is not in the best interest of the child.

We recognize the DV Act is intended "'to assure the victims of domestic violence the maximum protection from abuse the law can provide.'"  Cesare v. Cesare, 154 N.J. 394, 399 (1998) (quoting N.J.S.A. 2C:25-18).  However, the Supreme Court has long emphasized that "the child's best interests are paramount in child custody matters."  Matsumoto v. Matsumoto, 171 N.J. 110, 132 (2002); Brennan v. Orban, 145 N.J. 282, 301 (1996). Though "'there is no such thing as an act of domestic violence that is not serious,'" J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (quoting Brennan, supra, 145 N.J. at 298), some acts of domestic violence are more serious than others, compare id. at 475-76, 482 (emphasizing harassment is the "most challenging basis for a domestic violence complaint" because it is difficult to

distinguish from ordinary "domestic contretemps"), with N.J.S.A. 2C:25-18 (noting many victims "are regularly beaten, tortured and in some cases even killed").

Allowing our family courts to weigh the seriousness of the history of domestic violence against the other N.J.S.A. 9:2-4 factors, rather than binding them with a mechanical presumption, better enables them to consider the best interests of the child in determining the vital issue of child custody in divorce, using their "special expertise in the field of domestic relations." Cesare, supra, 154 N.J. at 412. In so doing, the court must consider "the safety of the child and the safety of either parent from physical abuse by the other parent." N.J.S.A. 9:2-4.

Here, the trial court began its consideration of custody by stressing the presumption, and concluded by citing the presumption as its number one reason for finding no change of circumstances. As set forth above, the court should instead have decided the custody issue in the divorce trial under "'a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c),'" Faucett, supra, 411 N.J. Super. at 118 (quoting Hand, supra, 391 N.J. Super. at 105), including but not limited to "the history of domestic violence," N.J.S.A. 9:2-4.

V.

We have reviewed the court's decision to determine whether it could be harmless error that the court used the pre-trial change-of-circumstances standard in deciding the custody issue, and relied on the inapplicable DV Act presumption. Our examination, however, convinces us that those errors were "clearly capable of producing an unjust result." R. 2:10-2; see Terry v. Terry, 270 N.J. Super. 105, 119-20 (App. Div. 1994).

Accordingly, we vacate the provisions of the judgment of divorce denying Father's request to change physical custody, parenting time, and schooling, and we remand for the trial court to consider the N.J.S.A. 9:2-4 factors anew. Rather than apply any changed-circumstances standard or the presumption in N.J.S.A. 2C:29-25(b)(11), the court shall analyze the N.J.S.A. 9:2-4 factors to determine whether the current physical custody, visitation, and home-schooling of the children is in the best interests of the children. The court's consideration of N.J.S.A. 9:2-4 factors should include relevant factors concerning the history of domestic violence, see Grover, supra, 379 N.J. Super. at 410, psychological evidence concerning the parents' mental health, see Kinsella v. Kinsella, 150 N.J. 276, 327-29 (1997), and evidence of parental non-cooperation, see Beck, supra, 86 N.J. at 499.

We recognize that the circumstances of the parties and children may have changed in the time since the divorce trial ended in early 2012. Accordingly, "'on remand both parties may supplement the record with any information that may be pertinent to the trial judge's determination of this case.'" See Morgan v. Morgan, 205 N.J. 50, 69 & n.3 (2011) (quoting Cooper v. Cooper, 99 N.J. 42, 59 (1984)).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4165-11T4