**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0212-23

AMIM BUTT,[1]

    Plaintiff-Appellant,

v.

MARIYAM KHALEEQUE,

    Defendant-Respondent.

_____

Submitted September 17, 2024 – September 30, 2024

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0329-18.

George G. Gussis, PA, attorneys for appellant (George G. Gussis, on the briefs).

Law Offices of Andrew N. Yurick, attorneys for respondent (Andrew N. Yurick, on the brief).

PER CURIAM

---

[1] Sometimes referred to as "Amin" Butt in the record.

In this post-judgment matrimonial matter, plaintiff Amim Butt appeals from an August 24, 2023 Family Part order designating his ex-wife, defendant Mariyam Khaleeque, as the parent of primary residence (PPR)[2] for their daughter, A.N.,[3] born in October 2017, and permitting the child to attend elementary school in the Cherry Hill School District. Plaintiff also appeals from the modification of his parenting time resulting in plaintiff having seventy-one less parenting days each year.

On appeal, plaintiff argues the judge: (1) erred in designating defendant the PPR for educational purposes; (2) abused her discretion in confirming defendant's enrollment of the parties' child in the Cherry Hill School District; (3) abused her discretion in modifying the parties' parenting schedule set forth in their marital settlement agreement (MSA) by finding a change of circumstances was created by allowing defendant to enroll the child in the

---

[2] The Child Support Guidelines use the term ["PPR"] to denote "[t]he parent with whom the child spends most of his or her overnight time," or "[i]f the time spent with each parent is equal . . . the parent with whom the child resides while attending school." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2025). The Guidelines use the term "[p]arent of [a]lternate [r]esidence" to denote "the parent with whom the child resides when not living in the primary residence." Ibid.

[3] We use initials to protect the identity and confidentiality of the child.

Cherry Hill School District, reducing his parenting time from 182 days per year to 108 days per year; (4) erred in allowing the child to be enrolled in the Cherry Hill School District as it was not in the best interest of the child; (5) violated N.J.S.A. 9:2-4 when a change of circumstances was created by allowing defendant to enroll the child in the Cherry Hill School District; (6) erred in rewarding defendant the enrollment of the child in the Cherry Hill School District after finding her in violation of litigant's rights in not adhering to the requirement of the MSA to address the school issue at least one year before it became an issue; (7) demonstrated gender bias in allowing defendant to enroll the child in the Cherry Hill School District as opposed to the East Windsor School District; and (8) abused her discretion by ignoring defendant's living arrangement.

Based on our review of the record, plaintiff's arguments, and the applicable legal principles, we reverse the order under review and remand to the Family Part for a plenary hearing on all issues.

I.

In 2015, plaintiff returned to Pakistan and entered into an arranged marriage with defendant. The following year—2016—the parties were married in Pakistan. In October 2017, after returning to the United States, their daughter

A-0212-23

was born.  The following month, plaintiff filed a divorce complaint against defendant on the ground of irreconcilable differences.

A final dual judgment of divorce (FDJD) incorporated the parties' MSA, which was entered on July 25, 2018.  The MSA provided that the parties would "share joint legal custody of the minor child of the marriage."  The following parenting plan was set forth in the MSA:

> Effective August 1, 2019 the parties shall equally share custody with each having fifty percent . . . of each week and PHASE 4 [C]hild [S]upport [G]uidelines shall apply.  Unless the parties agree otherwise in a writing signed by both of them, they shall follow a 2-2-3 schedule so that in Week One [defendant] shall have parenting time on Monday and Tuesday; [plaintiff] shall have parenting time on Wednesday and Thursday; and [defendant] shall have parenting on Friday, Saturday and Sunday; and in Week Two [plaintiff] shall have parenting time on Monday and Tuesday; [defendant] shall have parenting time on Wednesday and Thursday; and [plaintiff] shall have parenting on Friday, Saturday and Sunday.

Additionally, the MSA required the parties "confer at least one . . . year before the child [was] due to enter kindergarten to discuss a choice of schools."  The MSA provided that if the parties could not agree on the choice of a school, "they may attend mediation to attempt to resolve the issue or either party may bring an application to the [c]ourt."

4

The parties disagree about whether there were prior communications discussing which school A.N. would attend. Nevertheless, the record contains an email from defendant to plaintiff that was sent on January 6, 2023, where defendant discussed enrolling A.N. in the Cherry Hill School District. In her email defendant stated:

> I am reaching out to you with the proposal to reconsider and ultimately resolve [A.N.'s] school decision and residency accordingly. [A.N.] will be starting her [e]lementary school in September 2023. Many schools have started their pre-registration including Cherry Hill school district. Below is the proposal on which we both can work and decide with our mutual consent:
>
> 1. We can start working on [e]nrolling [A.N.] in Cherry [H]ill [S]chool [D]istrict with our mutual agreement.
>
> 2. Considering [A.N.'s] best interest, I propose having [A.N. for her] school residence and you can have your parenting time during the alternate weekends and/or some evenings. I am suggesting this as it is [a forty-five-]minute drive from Cherry [H]ill to East [W]indsor and with the traffic it is more than [forty-five] minutes which will not be healthy for [A.N.] with regular school and our current time sharing.
>
> Please let me know by the next week how you think about it.

5

A-0212-23

Plaintiff responded by recommending that A.N. attend the East Windsor School District—the district near his residence—instead so that "her home and school w[ould] be stable and consistent."

On May 18, 2023, defendant filed a motion seeking to enforce the parties' MSA, as well as permission to enroll the child in the Cherry Hill School District. In her moving certification, defendant stated that she lived in Cherry Hill and "specifically picked this location based on the high rating the Cherry Hill School District has in the State of New Jersey." Defendant also certified that she communicated with plaintiff that Cherry Hill was her preferred school district, and "pointed out to him that the East Windsor School District [. . .] is not even ranked in the State and has fewer options for [A.N.]." Defendant stated:

> For example, our daughter would be attending the Joseph D. Sharp Elementary School in Cherry Hill . . . . According to U.S. News and World Report [USNWR] on Education, Sharp Elementary School is ranked #47 in the State. The math proficiency rating is 82% and the reading proficiency is ranked at 87%. The report indicates that both math and reading performance for the school is "[w]ell [a]bove [e]xpectations."

Defendant noted the comparison to Walter C. Black Elementary School, which is unranked, and shows a math proficiency rate of about 50% and a reading proficiency rate of about 54%. Additionally, defendant's certification requested the judge modify the parties' 50/50 timesharing agreement because the back and

6

forth traveling "as it stands is too much and would not be healthy for [A.N.] as she needs a regular bedtime and schedule."

On June 21, 2023, plaintiff filed a notice of cross-motion opposing defendant's motion and requesting that he be designated the PPR for school purposes. In his cross-moving certification, plaintiff stated he only discovered that defendant enrolled their daughter in the Cherry Hill School District on January 25, 2023, after a conversation with A.N. led him to contact the school. He certified that defendant "never ha[d] any discussion with [him] about the East Windsor school system not being up to par for [A.N.'s] education." Plaintiff noted that Walter C. Black Elementary School's rating on Niche[4] is "A-" and it received an "A" in diversity and an "A+" in college prep.[5]

Plaintiff also certified that he contacted the East Windsor School District and arranged for A.N.'s enrollment on June 14, 2023, going so far as to bring her to kindergarten orientation on June 19, 2023. Additionally, plaintiff avers that it is in A.N.'s best interest to be enrolled in the East Windsor School District

---

[4] Niche is a website that provides rankings and reviews of kindergarten through twelfth grade schools, colleges, cities, neighborhoods, and companies across the United States. Niche.com, Crunchbase, https://www.crunchbase.com/organiza tion/niche-com (last visited September 23, 2024).

[5] Plaintiff omits that Niche also reports that Walter C. Black Elementary School had a reading proficiency rate of 57% and a math proficiency rate of 43%.

because A.N. would be around him and his family who are "fully Americanized," rather than be with defendant "in a Pakistani ethnic and religious bubble with limited socialization with non-Pakistanis outside of school."

On July 7, 2023, the judge briefly heard oral argument on the motions and reserved decision. On August 24, 2023, the judge issued an order and written decision. The judge granted defendant's motion and denied plaintiff's cross-motion. The judge found A.N. shall be enrolled in the Cherry Hill School District, with defendant being named the PPR, and that a modification of parenting time was necessary given the distance between the parties' homes and the need for the child to attend school in one district.

The judge determined that since defendant lived in South Jersey when the parties entered into the MSA, plaintiff should not have been surprised that defendant sought to have the child enrolled in a school district in South Jersey. The judge found that defendant's reason for moving to Cherry Hill after considering the education system was "acceptable."

In addition, the judge was not persuaded that A.N. would be harmed if permitted to remain in Cherry Hill, and determined that plaintiff's concerns about the child being raised in a "Pakistani bubble" were not logical or reasonable. The judge rejected plaintiff's argument that A.N. should go to East

8

Windsor School District because she has playdates and friends in the area because "there [was] no evidence that [A.N.] does not have similar playdates, friends, and socialization in the Cherry Hill School District."

The judge then sua sponte decided the parenting time schedule set forth in the MSA had to be modified because A.N. was beginning school in the fall. The judge first noted:

> Of the N.J.S.A. 9:2-4 factors, the geographic distance between the parties' homes weighs most heavily in favor of the need to modify custody. It is not in the child's best interest to travel approximately [forty] miles each way, predominantly on highways, half of the month in order to reach school, whether school is in Cherry Hill or in East Windsor.

Although the judge found that the increased distance between the parties' homes was due to defendant's move farther south from Maple Shade, the judge still ultimately determined that "a modification of the parenting time schedule [was] warranted and necessary given the distance between the parties' homes and the need for the child to attend school in one school district." Absent testimony from fact and/or expert witnesses, the judge determined that the best interests of the child would be best met with the following parenting time schedule:

> a. Plaintiff shall have parenting time the first three weekends in February, March, May, June, September, October, November, and December from Friday after

school to drop-off at school on Monday (72 overnights).

b. Plaintiff shall have parenting time July 1-31 each year (31 overnights). Defendant shall have parenting time from August 1-31 each year. Absent agreement of the parties or further order of the court, neither parent may take vacation time during the other parent's summer parenting time. Any summer vacations with the child must be taken during the parent's summer parenting time.

c. Plaintiff shall have the following holidays annually as additional parenting time: President's Day weekend from Friday after school to Tuesday drop-off at school (4 O/N) (overnight), Memorial Day weekend from Friday after school to Tuesday drop-off at school (4 O/N), and Thanksgiving Day weekend from Wednesday after school to Monday drop-off at school (5 O/N).

d. All holiday time and provisions not modified herein shall continue to alternate in accordance with the holidays language delineated in Article III, 13 of the [MSA].

e. Parenting time transportation shall continue as stated in the MSA.

On September 21, 2023, plaintiff filed a notice of appeal from the August 24, 2023 order. On October 20, 2023, the judge issued an amplification to her

August 24, 2023 order.[6] In her amplified written statement of reasons, the judge first acknowledged that the issue of this case centers around the initial school district placement of A.N., which in turn necessitates a modification of the parties' custody agreement. The judge then analyzed the fourteen factors set forth in N.J.S.A. 9:2-4, to "support a change in custody naming defendant as the [PPR] to allow [A.N.] to attend school in Cherry Hill."

Starting with factor one—the parent's ability to agree, communicate and cooperate in matters relating to the child—the judge found it was neutral and did not favor either party. The judge stated, "[t]he parties' difficult and incomplete communications in early 2023 regarding school selection, despite knowing that they needed to address and agree on this issue for the upcoming school year as contemplated by the [MSA], demonstrates an inability to communicate with each other effectively."

Next, the judge found that factor two—the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse—fell in neither party's favor noting that there were no allegations of unwillingness to allow parenting time by either party.

---

[6] "Rule 2:5-1(b) . . . permits a judge, officer, or agency to file an amplification of a prior decision if it is appealed . . . ." In re Proposed Quest Acad. Charter Sch., 216 N.J. 370, 383 (2013).

As for factor three—the interaction and relationship of the child with its parents and siblings—the judge found this factor was neutral. The judge noted that "both parties appear to care for the child and her best interests."

The judge found that factor four—the history of domestic violence, if any—also fell in neither party's favor because there are no allegations of domestic violence.

Regarding factor five—the safety of the child and the safety of either parent from physical abuse by the other parent—the judge found there was "insufficient information to address this factor."

The judge next found that factor six—the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision—was neutral and not applicable because A.N. was not of sufficient age.

As to factor seven—the needs of the child—the judge found this factor weighed in defendant's favor. The judge supported her conclusion by noting that "Cherry Hill offers better educational opportunities than East Windsor . . . [so] residing primarily with defendant in Cherry Hill is in the child's best interest."

The judge determined that factor eight—the stability of the home environment offered—did not fall in favor of either party. The judge highlighted

A-0212-23

there was "insufficient support for plaintiff's belief that his background provides more stability to the child than defendant, or that defendant's background provides instability." In addition, the judge noted that both parents receive support from family members, and both "appear to be able to provide a stable home environment for the child."

After analyzing factor nine—the quality and continuity of the child's education—the judge determined this factor fell in defendant's favor. In support of her decision, the judge referenced the information provided by both parties:

> Plaintiff provides at his Exhibit V a Niche rating for East Windsor schools which shows a summary A- as the Overall Niche Grade. However, it is unclear how this was calculated as the East Windsor Schools also have the following Niche ratings, which average to a B or B+:
>
> | | |
> |-----|----------------------|
> | B+ | Academics |
> | B+ | Teachers |
> | B | Clubs & Activities |
> | B+ | Sports |
> | C | Resources & Facilities |
> | A | Diversity |
> | A+ | College Prep |
> | B- | Administration |
> | B- | Food |
>
> Significant to the analysis is that both parties' exhibits show that Cherry Hill is superior to East Windsor statistically. The East Windsor school Niche ratings for math (43% proficiency) and reading (57% proficiency) are similar to the [USNWR] statistics cited by plaintiff

(Exhibit C) for math (50% proficiency) and reading (54% proficiency). Defendant shows at her Exhibit B that the Cherry Hill school ratings are far higher for math (82% proficiency) and reading (87% proficiency) than those for East Windsor. She also notes that East Windsor is not among the ranked schools in USNWR, while Cherry Hill is ranked 47 in the state. The Niche rating for Best Schools in New Jersey places East Windsor at #99 of 243.

The judge also found that factor ten—the fitness of the parents—fell in neither party's favor and pointed out that neither party alleged that the other parent was "unfit."

The judge found factor eleven—the geographical proximity of the parents' homes—fell in neither party's favor. The judge noted, "[t]he lack of proximity of the parties' homes was addressed in the underlying August 24, 2023 [o]rder, as well and is the primary reason for the need to modify custody."

The judge determined that factor twelve—the extent and quality of the time spent with the child prior to or subsequent to the separation—fell in neither party's favor because "neither party provided substantial facts as to this."

Regarding factor thirteen—the parents' employment responsibilities—the judge found this factor fell in neither party's favor. The judge emphasized that each party asserts they have flexible work schedules, but both fail to address

14

their specific employment opportunities and how it could impact their availability.

Finally, the judge found factor fourteen—the age and number of the children—fell in neither party's favor. The judge stated, "[t]he child is now six years old and has no siblings. She is still entirely reliant on the parties for her care. This includes needing to be transported to and from school with the least amount of risk."

Overall, the judge found that the parts were "generally equal" in standing, but that factors seven and nine continue to support a change in custody. The judge stated:

> The quality of education that defendant can provide in Cherry Hill exceeds what plaintiff can provide in East Windsor. The major difference between the two parties is found in their Exhibits V (plaintiff) and C (defendant), which show that Cherry Hill as compared to East Windsor has superior student proficiency in math and reading, as well as a general overall higher ranking for schools in New Jersey. This persuades the court that it is in the child's best interest to attend Cherry Hill schools. Custody must be modified so the child does not have to travel extensively from plaintiff[']s home to and from Cherry Hill for school or rise especially early at plaintiff[']s home in order to reach Cherry Hill on time for school. She also will have more time for friends and activities at school if she primarily resides close by at defendant[']s home in Cherry Hill.

This appeal followed.

## II.

Our review of a Family Part order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. Therefore, findings made by the Family Part are "binding on appeal when supported by adequate, substantial, and credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "We will reverse only if we find the trial [court] clearly abused [its] discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012) (quoting Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)). Accordingly, we should not disturb the trial court's fact findings unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms, 65 N.J. at 484).

We do not defer to a trial court on questions of law. N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 330 (App. Div. 2011). We conduct a de novo review of a trial court's legal conclusions and interpretations of the

law.  Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).  "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

It is axiomatic that the best interests of the child is the fundamental legal principle guiding our review.  D.A. v. R.C., 438 N.J. Super. 431, 450 (App. Div. 2014) (citing Kinsella v. Kinsella, 150 N.J. 276, 317-18 (1997)).  "A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4."  Bisbing v. Bisbing, 230 N.J. 309, 322 (2017).

The party seeking to change a judgment or agreement involving a custodial arrangement bears the burden of demonstrating the status quo is no longer in a child's best interest.  See Ibid.  "Modification of an existing child custody order is a 'two-step process.'"  Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (quoting R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014)).

17

"First, a party must show 'a change of circumstances warranting [a] modification' of the custodial arrangements." Ibid. (quoting R.K., 437 N.J. Super. at 63). "If the party makes that showing, the party is 'entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order.'" Ibid. (quoting R.K., 437 N.J. Super. at 62-63). "A thorough plenary hearing is necessary in contested custody matters where the parents make materially conflicting representations of fact." J.G. v. J.H., 457 N.J. Super. 365, 372 (App. Div. 2019) (citing K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014)).

However, "not every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995) (citing Adler v. Adler, 229 N.J. Super. 496, 500 (App. Div. 1988)). "[A] plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Segal v. Lynch, 211 N.J. 230, 264-65 (2012) (citations omitted). "Without such a standard, courts would be obligated to hold hearings on every modification application." Lepis v. Lepis, 83 N.J. 139, 159 (1980).

A-0212-23

Although, "not every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing[,] . . . we have repeatedly emphasized that trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications." Harrington, 281 N.J. Super. at 47 (App. Div. 1995); see also Faucett v. Vasquez, 411 N.J. Super. 108, 119 (App. Div. 2009) ("Absent exigent circumstances, changes in custody should not be ordered without a full plenary hearing."). A judge's decision not to conduct a plenary hearing is reviewed on an abuse of discretion standard. Hand v. Hand, 391 N.J. Super. 102, 111-12 (App. Div. 2007); see also Lepis, 83 N.J. at 159 (finding "courts should be free to exercise their discretion to prevent unnecessary duplication of proofs and arguments.").

We consider whether plaintiff is entitled to a plenary hearing on his cross-motion. Plaintiff seeks a plenary hearing to determine which school district A.N. should attend. Plaintiff contends the parties' conflicting certifications demonstrated there was a genuine factual dispute regarding A.N.'s welfare, and the judge abused her discretion by not conducting a plenary hearing. We agree.

Based on the record, we are persuaded the judge abused her discretion in denying a plenary hearing on selection of A.N.'s school. Here, plaintiff and defendant provided very different and conflicting school rankings. For example,

plaintiff provided a 2023 Niche ranking for the entirety of the East Windsor School District, which explained that the overall ranking was A- and it received an A in diversity and an A+ in college prep.

Defendant on the other hand provided a 2021 USNWR ranking for Joesph D. Sharp Elementary School, which explained the school was ranked #47 in the State and had a math proficiency rate of 82% and a reading proficiency rate of 87%. Defendant also provided a 2021 USNWR ranking for Walter C. Black Elementary School, which explained the school was unranked and had a math proficiency rate of 50% and a reading proficiency rate of 54%.

The school rankings—which are hearsay—neither come from the same website nor are from the same year. Moreover, the rankings do not survey the same subject matter; plaintiff's ranking is for the district as a whole and defendant's rankings focused specifically on the elementary schools. Thus, the judge evaluated different and conflicting rankings and then ultimately adopted defendant's rankings over plaintiff's without the benefit of a plenary hearing and substantially changed the parties' 50/50 custody and parenting time plan set forth in their MSA.[7]

---

[7] The judge also could have appointed a guardian ad litem for the child. Pursuant to N.J.S.A. 9:2-4 and Rule 5:8B, the court may appoint a guardian ad

Where, as here, the parents share joint custody and are unable to agree on where to send their child to school, "[i]t is axiomatic that the court should seek to advance the best interests of the child." Levine v. Levine, 322 N.J. Super. 558, 563 (App. Div. 1999) (quoting Asch v. Asch, 164 N.J. Super. 499, 505 (App. Div. 1978)). "The 'best interests' of the child means, among other things: (1) the right of [the] children to be supported, nurtured, and educated in accord with the parents' collective income; and (2) requiring the parents to keep their promises and commitments consistent with their ability to do so." D.G. v. K.S., 444 N.J. Super. 423, 439 (Ch. Div. 2015) (citing Hoefers v. Jones, 288 N.J. Super. 590, 604 (Ch. Div. 1994), aff'd., 288 N.J. Super. 478 (App. Div. 1996)).

A determination of which school is in a child's best interests is "inherently subjective." Levine, 322 N.J. Super. at 567. Such a determination requires the court to not only consider a school's statistics and ranking, but also "peer relationships, the continuity of friends[,] and an emotional attachment to school

litem in any case in which custody or parenting time or visitation is an issue. A guardian ad litem appointed pursuant to Rule 5:8B "acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child." Pressler & Verniero, Current N.J. Court Rules, off. cmt. on R. 5:8A and 5:8B; see also Milne v. Goldenberg, 428 N.J. Super. 184, 201 (App. Div. 2012) (noting that the guardian ad litem is to have "no perceived bias in favor of one parent's position because [his or her] role is to act on behalf of the court and present the best interests of the children").

21                                                                    A-0212-23

and community that will hopefully stimulate intelligence and growth to expand opportunity." Ibid.

In our view, the judge erred by not conducting a plenary hearing on the issue of what school A.N. should attend and by selecting the Cherry Hill School District based on conflicting school rankings and designating defendant as PPR for school purposes. The judge also erred in changing the 50/50 custody and parenting time provision contained in the MSA. It appears the only order expressly addressing custody and parenting time is the MSA. Nonetheless, the judge did not consider whether defendant made an adequate showing the circumstances had substantially changed following the entry of the FDJD incorporating the MSA such that a change in the 50/50 custody and parenting time is appropriate.

For these reasons, we reverse the August 24, 2023 order and remand for a plenary hearing. In remanding the matter to the judge, we do not express any view on the merits of the motion and cross-motion. Those determinations shall be made by the judge in the first instance based on the record presented as supplemented by any additional factual and expert testimony. The judge shall conduct such proceedings on remand as she deems appropriate to address and decide the motion and cross-motion anew. We also recognize that the evidence

22

at the plenary hearing will include evidence concerning how A.N. is doing at her current school and whether a change will be in her best interests.

Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0212-23