PER CURIAM
Defendant J.W.[1] appeals from the Family Part's July 10, 2015 order terminating litigation initiated by the Division of Child Protection and Permanency ("Division") pursuant to N.J.S.A. 30:4C-12 against defendant and E.E., who are the parents of T.J.W. ("Terry"), born in 2006; X.T.W. ("Alex"), born in 2010; and P.G.W. ("Penny"), born in 2011.[2] The order also provided that defendant, whose visitation with the children had been suspended for over three years prior to April 2015 when supervised visits were again permitted, could "not have unsupervised visits with the children until a specialist recommend[ed] that such visits [were] safe and in the children's best interest[s]."
Although defendant did not object to the dismissal of the litigation before the trial judge, he asserts on appeal that the judge "erred in entering an order dismissing the litigation with the provision restricting [defendant's] contact with his children as the Division failed to make reasonable efforts to provide [defendant] with services." Defendant also contends for the first time that the judge should have conducted an "evidentiary dispositional hearing" prior to terminating the litigation.
The Division and all three of defendant's children[3] support the trial judge's determination on appeal. Based on our review of the record and applicable law, we affirm, without prejudice to defendant's continued ability to pursue relief through an application in the non-dissolution ("FD") docket.
I.
We derive the following procedural history and facts from the record developed before the Family Part. The Division first became involved with defendant and E.E. in February 2009, when it received referrals asserting that Terry had been taken to a hospital with severe diaper rash and bug bites, and that defendant had beaten Joseph with a belt. After an investigation, the Division determined that the allegations of environmental neglect and abuse were unfounded.
However, in December 2009, a referent advised the Division that Jane had reported that defendant hit her in the head with a garbage can and that she was afraid of him and did not want to go home. Following another investigation, the Division substantiated these allegations of physical abuse and neglect against defendant.
In December 2010, the Division substantiated defendant for inadequate supervision and neglect of Terry, after the child was found in the street wearing only a diaper and a tee shirt and without shoes or socks while she was in defendant's care. A week later, the Division received another report that defendant and E.E. failed to provide Jane and Joseph with eyeglasses and had not taken Joseph to his cardiologist for treatment of a heart murmur.
Over the course of the next two months, the Division repeatedly tried to interview defendant and E.E. about these concerns, but they refused to answer their door or respond to the Division's letters. Therefore, on February 10, 2011, the Division filed a complaint for care, supervision, and custody of Terry, Alex, Jane, and Joseph. On February 15, 2011, the trial judge removed all four children from the home and placed them in the Division's custody.
The trial judge thereafter conducted a four-day fact-finding hearing to determine whether defendant and E.E. had abused or neglected the children. At the conclusion of the hearing on May 17, 2011, defendant stipulated to inadequate supervision of Terry and medical neglect of Joseph. E.E. stipulated that she placed Joseph at a substantial risk of harm by neglecting to take him to his cardiologist appointments and failing to provide him with eyeglasses.
After the May 17, 2011 hearing, defendant disappeared and he did not attend the next two review hearings that the trial judge conducted on June 7, 2011, and September 7, 2011. Defendant appeared for the first time in five months at the October 19, 2011 review hearing. Prior to that hearing, defendant underwent a psychological evaluation, and the psychologist recommended that he begin therapy for anger management, and continue to attend parenting skills classes which he had just begun.
On December 13, 2011, the Division amended its complaint to cover Penny, who was then two-months old. Defendant and E.E. had not disclosed this pregnancy to the Division and were again evading supervision. On December 13, 2011, the trial judge granted custody of Penny to the Division. At that time, defendant and E.E.'s visitation with all three of their children continued to be supervised by the Division.
Following a permanency hearing on January 25, 2012, the trial judge issued an order documenting that defendant had not completed a required drug and alcohol assessment, individual therapy, anger management counseling, or domestic violence counseling. On the other hand, the order noted that E.E. "has been compliant with the Division services."
After this order was entered, defendant again disappeared from the litigation and stopped participating in services. Defendant failed to attend a fact-finding hearing on April 25, 2012, where E.E. stipulated that at the time Penny was born, she had not completed services and, therefore, it had not been safe for the infant to remain in her care. The Division advised the trial judge that defendant had not visited his children for at least six months; defendant and E.E. had separated; and defendant's current whereabouts were unknown.
Thereafter, defendant did not appear in court for compliance hearings on June 22, 2012, July 18, 2012, and August 7, 2012. Needless to say, defendant was not complying with services or visiting the three children, and he could not be located despite the fact that the Division continued to search for him. On August 7, 2012, the trial judge issued an order stating that if defendant and E.E. reunited at some point in the future, defendant "should have no contact with the children whatsoever" and his visitation with the children would be suspended until he made "an appropriate application to the [c]ourt." Defendant did not attend the next two hearings, conducted on September 7, 2012, and October 4, 2012.
During this period, E.E. also began evading the Division and was no longer complying with court-ordered psychological services. Accordingly, at a permanency hearing on January 10, 2013, the Division advised the trial judge that the goal for the litigation had changed from reunification to termination of parental rights followed by adoption. By this date, defendant had not complied with any services for over a year and he had not visited his children during that time period. The January 10, 2013 order continued to state that defendant was not to have any contact with the children until he completed anger management counseling, individual therapy, and domestic violence counseling.
On March 7, 2013, the trial judge dismissed the FN litigation after the Division filed a complaint under the FG docket to terminate defendant's and E.E.'s parental rights. Defendant remained missing. He had not complied with any services and was not visiting the children. On July 25, 2013, the judge entered a default against defendant in the termination of parental rights action.
However, E.E. soon began to turn her life around and resumed complying with services. At an April 2, 2014 compliance hearing, the Division advised the trial judge that based on the strides E.E. had made, the Division's expert had recommended that E.E. gradually be reunited with the children pursuant to a visitation schedule developed by the Division, which also provided for individual therapy for Jane and Terry to assist them in the process. The matter was therefore returned to the FN docket. Defendant, who had not visited his children or participated in any of the court proceedings since January 2012, remained absent from the litigation. E.E. stated that she had not had any contact with defendant and had no knowledge of his whereabouts.
Finally, on July 17, 2014, thirty months after last attending a court proceeding or visiting his three children, defendant appeared at a compliance review hearing and was again assigned an attorney. By that time, Penny, Alex, and Joseph had been returned to E.E.'s custody, while Jane and Terry remained in a foster home. As for defendant, the trial judge continued the suspension of visitation because defendant had not yet complied with any of the services directed by the judge's numerous prior orders.
The judge also ordered defendant to undergo another psychological evaluation, and defendant's trial attorney arranged for the evaluation to be conducted on July 30, 2014. In his report, the psychologist recommended that defendant have supervised, therapeutic visitation with the three children through the Tri-Cities program, and individual counseling to address his conflict resolution and social skills issues.
Rather than take advantage of these services, however, defendant again failed to appear at the next hearing, an October 22, 2014 compliance review. As of that date, defendant had not: complied or participated in any of the services recommended by his psychologist on July 30, 2014; attempted to have supervised visits with the children; or maintained contact with the Division. Accordingly, the trial judge continued the suspension of defendant's visitation.
By the time of the October 22, 2014 hearing, Terry had returned to E.E.'s custody and Jane had been placed in the custody of her father, J.E. Thus, the trial judge determined that a permanency hearing was no longer necessary because all five children were now with "biological parents."
The trial judge conducted the next compliance review hearing on February 4, 2015, and defendant appeared with his attorney. The Division advised the trial judge that it was investigating an allegation that defendant had returned to E.E.'s home in violation of previous court orders, and it asked the judge to direct defendant to provide the Division with his current address. Defendant gave the Division an address, but he did not provide the specific apartment number where he lived. Therefore, the Division was unable to locate him.
Through counsel, defendant asserted that he wanted to visit with the children. The trial judge ordered defendant to "comply with the recommendations of the [July 30, 2014] psychological evaluation in order to have unsupervised contact with the children." Defendant did not do so.
At the next compliance hearing on April 1, 2015, the Division advised the trial judge that following its investigation, it had determined that defendant was not living in E.E.'s home with the children. The Division also stated that defendant had not provided his correct address until the day before the hearing.
The Division agreed to again set up services for defendant, although it noted that defendant had a long history of noncompliance. In the April 1, 2015 order, the trial judge stated that defendant could have "separate therapeutic supervised visitation" with Terry, Alex, and Penny.
The Division attempted to arrange these visits; however, no program was available at that time. On May 29, 2015, the Division advised the trial judge that visits could occur under its supervision at the Division's office and that defendant's attorney had consented to this arrangement.
The Division continued to attempt to locate an agency that could provide supervised therapeutic visitation for defendant, and learned that the Tri-Cities organization had such a program. In a June 10, 2015 report, however, the Division advised the trial judge that defendant's schedule conflicted with the available time slots offered by Tri-Cities. Defendant only attended one supervised visitation session at the Division's office. This visit occurred on June 19, 2015.
On June 25, 2015, the Division asked the trial judge to terminate the litigation and order defendant to attend counseling prior to the lifting of the long-standing restrictions on his visitation with the children.[4] The Division noted that defendant had repeatedly been ordered to participate in this counseling as a condition for having contact with the children, but he had failed to do so. The Division also agreed to continue to offer defendant supervised visitation with the children at its office.
Defendant's attorney stated that defendant was willing to participate in counseling, and did not have an objection to the termination of the litigation. However, defense counsel also stated that defendant did object to continued restrictions on his visitation. Counsel took this position despite the fact that defendant had seen the children only once since January 2012 and had never completed any of the services recommended by his own psychologist and ordered by the trial judge.
Defendant's attorney did not ask the trial judge to conduct an evidentiary hearing on any issue. Instead, defense counsel suggested that "if the matter is dismissed, it will be between the parents [to arrange visitation] and if there's not agreement, they can either one can file an FD" application to address the issue. The Division's attorney agreed with this approach, with Alex and Penny's attorney then suggesting that defendant be ordered to continue with supervised visitation until he completed the counseling services.
In response, the trial judge directed the Division to make a referral for defendant to a counselor. The judge further stated that once defendant received a positive report from the counselor indicating that unsupervised visitation was appropriate, such visitation could occur. The judge also noted that he would likely be handling any future FD matter if issues arose concerning counseling or visitation.
In a July 10, 2015 order, the trial judge terminated the litigation involving defendant and E.E. because their children were in E.E.'s custody, just as they had been since October 2014. The judge also ordered that: (1) defendant's visits with the children would remain supervised by the Division "until a specialist recommends that such visits are safe and in the children's best interest[s]"; and (2) "the matter may continue under an FD docket to resolve outstanding issues with the family." This appeal followed.
II.
On appeal, defendant challenges the trial judge's determination and asserts that the Division failed to make reasonable efforts to provide services to defendant that would have enabled him to have unsupervised visitation with the children. Defendant also asserts the trial judge erred by failing to conduct a hearing prior to terminating the litigation. We disagree with both contentions.
Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A. , 205 N.J. 150, 169, 14 A .3d 36 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare , 154 N.J. 394, 411-12, 713 A .2d 390 (1998) ). We "should not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (internal quotation marks omitted). However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. Mountain Hill, L.L.C. v. Twp. Comm. of Middletown , 403 N.J.Super. 146, 193, 958 A .2d 1 (App. Div. 2008), certif. denied , 199 N.J. 129 (2009).
We also extend special deference to the Family Part's expertise. N.J. Div. of Youth & Family Servs. v. M.C. III , 201 N.J. 328, 342-43, 990 A .2d 1097 (2010) ; Cesare , supra , 154 N.J. at 413, 713 A .2d 390. Unless the trial judge's factual findings are "so wide of the mark that a mistake must have been made" they should not be disturbed. N.J. Div. of Youth & Family Servs. v. M.M. , 189 N.J. 261, 279, 914 A .2d 1265 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of North America Inc. , 233 N.J.Super. 65, 69, 558 A .2d 28 (App. Div.), certif. denied , 117 N.J. 165, 564 A .2d 883 (1989) ). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. N.J. Div. of Youth & Family Servs. v. F.M. , 211 N.J. 420, 448-49, 48 A .3d 1075 (2012).
Applying these standards, we discern no basis for disturbing the trial judge's reasoned decision to terminate this long-running litigation brought by the Division. Indeed, as noted above, defendant's trial attorney advised the trial judge that defendant "doesn't have an objection to the case being dismissed[.]" See M.C. III , supra , 201 N.J. at 340, 990 A .2d 1097 (quoting Brett v. Great Am. Recreation , 144 N.J. 479, 503, 677 A .2d 705 (1996) ) (noting that the doctrine of invited error bars a "disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error").
Even if defendant had not agreed that the matter should be dismissed, the trial judge properly determined that continuing the litigation under the FN docket was no longer necessary. Alex and Penny had been placed back into E.E.'s custody in July 2014, and Terry returned to her mother's care sometime before the October 22, 2014 compliance review hearing. The children were placed in E.E.'s custody because she had fully complied with the services ordered by the trial judge.
Significantly, when Alex and Penny returned to E.E., defendant was still missing from the litigation. He appeared once before E.E.'s custody of Terry was restored, but promptly disappeared again. Under these circumstances, there was certainly no justification to require E.E., Terry, Alex, and Penny to continue to participate in the FN matter. See N.J. Div. of Child Prot. & Permanency v. G.S. , 447 N.J.Super. 539, 578, 149 A .3d 816 (App. Div. 2016) (citing N.J. Div. of Youth & Family Servs. v. K.M. , 136 N.J. 546, 558, 643 A .2d 987 (1994) ) (noting that the "prospect of delay [in child protection cases] is particularly worrisome in light of the strong policies that favor achieving permanency of outcomes for children who remain in limbo while Title 9 and Title 30 cases are litigated").
Defendant next asserts that the Division failed to provide him with the services he needed to complete in order to have unsupervised visitation with the three children. However, the record does not support this contention.
After defendant was substantiated for abuse and neglect for the second time on May 2011, he disappeared for five months. When he returned, the Division arranged for a psychological evaluation, which resulted in a recommendation that defendant participate in anger management therapy, parenting skills training, and other services. However, by January 2012, defendant had not completed a drug and alcohol assessment, individual therapy, anger management counseling, or domestic violence counseling. Defendant then disappeared for the next thirty months.
When defendant finally reappeared in July 2014, his own psychologist recommended that his visitation with the children be supervised by a therapist and that defendant participate in individual counseling. Once again, defendant went missing, this time for seven months. At the February 2015 compliance review hearing, defendant gave the Division an incorrect address and, therefore, the Division was unable to contact him for the next two months.
When defendant appeared at the April 1, 2015 hearing, he asserted he was now ready to comply with services, and the trial judge permitted him to have "separate therapeutic supervised visitation" with the three children. However, the Division was not able to immediately locate a program to supervise the visits and kept the judge apprised of its progress. When the Division arranged for the Tri-Cities organization to offer this service, defendant's schedule conflicted with the program. Therefore, the Division undertook the supervision of the visits at its office. Between April 1, 2015 and the date of the final compliance review hearing on June 25, 2015, defendant participated in only one visit with the children.
In view of these uncontradicted facts, defendant's contention that the Division did not "make reasonable efforts to provide [defendant] with services" rings hollow. As detailed above, defendant was missing for the majority of the time this case was in litigation. During these periods, he did not participate in any of the services the Division arranged and he did not take advantage of the opportunity to have supervised visits with his children. When defendant decided to take part in the litigation, the Division provided services and referrals to him. Therefore, we reject defendant's contention on this point.
Defendant also asserts that the record does not support the judge's decision to require that defendant's visits with the children be supervised until a specialist conducted an evaluation and determined that it was safe for unsupervised visits to occur. This argument also lacks merit.
Since January 2012, defendant only visited with the children on one occasion, just six days before the final hearing on June 25, 2015. During that forty-one-month period, defendant did not complete any of the counseling services ordered by the trial judge. Defendant's own psychologist had recommended that defendant's visits be supervised by a therapist. Under these circumstances, continuing the status quo and requiring that defendant's visits remained supervised until he obtained a favorable report from his therapist was the only prudent course for the trial judge to take.
Defendant also complains that because the FN litigation has been terminated, he will not be able to secure the services of a therapist to evaluate his progress toward having unsupervised visitation. However, the trial judge specifically advised the parties that if issues arose after the termination of the FN case, they could return to court and present them for consideration under FD docket. Thus, the judge adequately addressed this issue in his final decision.[5]
Finally, defendant argues that the trial judge should have conducted an "evidentiary dispositional hearing" before returning the children to E.E. and ordering that defendant's parenting time continue to be supervised. Again, we disagree.
In N.J. Div. of Youth & Family Servs. v. G.M. , our Supreme Court held "that the statutory framework of Title Nine provides that upon a finding of abuse and neglect, the offending parent or guardian is entitled to a dispositional hearing to determine whether the children may safely return to his or her custody, and if not, what the proper disposition should be." 198 N.J. 382, 387-88, 968 A .2d 698 (2009). Such a dispositional hearing is commonly referred to as a " G.M. hearing." N.J. Div. of Youth Family Servs. v. W.F. , 434 N.J.Super. 288, 300, 83 A .3d 892 (App. Div.), certif. denied , 218 N.J. 275, 94 A .3d 912 (2014).
Defendant did not ask the trial judge to conduct a G.M. hearing prior to the termination of the FN litigation and, as already noted, defendant did not object to the termination of the litigation. Defendant also never asked for custody of the three children, who were doing well in E.E.'s care. In addition, the children had been returned to E.E.'s custody more than eight months before the termination of the litigation, during periods when defendant had removed himself from the proceedings.
Moreover, there were no material disputed facts in this case warranting a hearing. Hand v. Hand , 391 N.J.Super. 102, 105, 917 A .2d 269 (App. Div. 2007) (holding that plenary hearings are only required where there are disputes as to the material facts). The record clearly reflects that defendant had only visited his children once since January 2012 and that, during the entire course of the litigation, he never completed any of the services afforded to him. There was therefore no need for the trial judge to conduct a plenary hearing before entering the July 10, 2015 order that is the subject of this appeal.
In sum, we reiterate that children have a strong need for stability in their lives, and we have long recognized the harm they can suffer from continuing custody litigation. G.S. , supra , 447 N.J.Super. at 578, 149 A .3d 816. We discern no basis to reopen this litigation now, especially in view of the fact that the trial judge specifically advised defendant that if he encountered any problems in completing services, he could return to court with an application under the FD docket to address his concerns and seek appropriate relief.
Affirmed.

We refer to the parties by initials and to the children by fictitious names in order to preserve their privacy.

E.E. is also the parent of two other children, "Jane," born in 1999, and "Joseph," born in 2002. Jane and Joseph are no longer involved in the present litigation. J.E. is the father of these two children, who were being cared for by defendant and E.E. when the Division became involved with the family in February 2009. J.E. is also not involved in the present appeal.

Terry is represented by one Law Guardian and Alex and Penny are represented by another Law Guardian.

Since January 2012, defendant had only visited with his children on one occasion, June 19, 2015. As detailed above, defendant was missing for almost all of this time period.

At oral argument on appeal, counsel for the Division acknowledged that the judge presiding over an application in the FD docket might consider notifying the Division of the application and that the Division might elect to participate in the FD proceeding upon such application and assess whether any future services are warranted. The judge in the FD matter is also free to consider, upon a proper showing by the movant, whether the FN matter should be reopened for purposes of modifying the ongoing conditions contained in the final dispositional order.