# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4434-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

E.L.B.,

     Defendant-Appellant,

and

S.E.H.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF L.J.B.,

     a Minor.

_____

Submitted February 11, 2019 – Decided  February 26, 2019

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0032-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Victor E. Ramos, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Kimberly S. Dinenberg, Deputy Attorney General, on the brief.)

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Joseph H. Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant, E.L.B.,[1] appeals from a May 16, 2018 Family Part judgment terminating his parental rights to his son, L.J.B., born in October 2016.[2] Defendant contends the Division of Child Protection and Permanency (Division) failed to prove the first three prongs of N.J.S.A. 30:4C-15.1(a) by clear and

---

[1] We use initials to identify the parties and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

[2] The judgment also terminated the parental rights of L.J.B.'s biological mother, S.E.H., pursuant to a voluntary identified surrender executed prior to commencement of the guardianship trial. S.E.H. is not a party to this appeal. Defendant's older biological child, G.B., is in the custody of his biological mother and is not a party to this appeal.

convincing evidence. The Law Guardian joins the Division in supporting the judgment.

In a comprehensive oral decision, Judge W. Todd Miller found the Division satisfied the four-prong test by clear and convincing evidence, and held that termination was in the child's best interests. In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999). Based on our review of the record and applicable law, we are satisfied the evidence in favor of the guardianship petition adequately supports the termination of defendant's parental rights. See N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (holding that a reviewing court should uphold the factual findings regarding the termination of parental rights if they are supported by substantial and credible evidence in the record as a whole). Accordingly, we affirm.

I.

The guardianship trial spanned two successive days in May 2018. The Division moved into evidence voluminous documents, and presented testimony from a caseworker and Alan J. Lee, Psy.D., a licensed psychologist. Defendant did not testify, but moved into evidence two documents: the termination

summary of his visitation services program, and a written stipulation that he was convicted of a burglary offense.[3]

The evidence adduced at the trial is set forth at length in Judge Miller's opinion and need not be repeated in the same level of detail here. Instead, we incorporate by reference the judge's thorough factual findings and summarize the most significant evidence to lend context to the judge's legal conclusions.

The Division first became involved with the family when the hospital reported S.E.H. tested positive for heroin, opiates, and methadone, and had given birth to L.J.B. the previous day. L.J.B. was born prematurely, weighing less than four pounds, and tested positive for cocaine and opiates. S.E.H. told the Division that she and defendant used cocaine and heroin together, but sought substance abuse treatment after S.E.H. became pregnant. Diagnosed with neonatal abstinence syndrome, L.J.B. was admitted to the neonatal intensive care unit (NICU), where he remained for nearly two months.

---

[3] The judgment of conviction was not entered into evidence. At the time of trial, defendant was imprisoned for the burglary conviction, with an anticipated first parole eligibility date of October 9, 2020 and a maximum release date of February 2, 2021.

Upon L.J.B.'s release from the hospital, the Division executed a Dodd removal,[4] and was granted custody following a hearing on November 29, 2016. The Division initially placed L.J.B. in a nonrelative foster home, but within two months, he was placed with S.E.H.'s aunt, D.M., a registered nurse assigned to the NICU, and D.M.'s paramour, R.S., a retired firefighter. L.J.B. was later diagnosed with cerebral palsy and failure to thrive, requiring a special diet and strict feeding regimen. The child remains in the custody of D.M. and R.S., who want to adopt him.[5]

During the ensuing months, the Division provided a multitude of services to defendant, including a substance abuse evaluation, continued drug treatment, a psychological evaluation, and supervised visitation. Defendant's psychological evaluation indicated he needed parenting skills training classes, individual psychotherapy, family therapy, and substance abuse treatment. Despite the Division's continued prompting, defendant refused to seek employment, pending reunification with L.J.B.

---

[4] A Dodd removal is an emergent removal of a minor without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82, known as the Dodd Act. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

[5] Pursuant to S.E.H.'s identified surrender either D.M., solely, or D.M. and R.S., jointly, can adopt L.J.B.

Although defendant availed himself of services, he was unable to eliminate the risk of harm to L.J.B. By June 2017 he missed one week of methadone dosages after he and S.E.H. were arrested and incarcerated for a domestic violence incident. Thereafter, defendant was discharged for non-compliance from his drug treatment program and visitation services program; and arrested and incarcerated for the burglary offense, for which he is currently imprisoned. In December 2017, the Division filed a complaint for guardianship.

Based on the evidence adduced at the guardianship trial, Judge Miller aptly analyzed each prong of the best interests test, and gave careful attention to the importance of permanency and stability for L.J.B. In doing so, the judge made detailed credibility findings, determining the Division's witness was "very credible." In particular, the judge credited the expert opinion of Dr. Lee, who performed defendant's psychological evaluation, and bonding evaluations of L.J.B. with defendant and with D.M. and R.S. Ultimately, the judge concluded it was in the best interests of L.J.B. to terminate defendant's parental rights. This appeal followed.

## II.

It is well settled that parents have a fundamental right to raise their children, and that right is constitutionally protected. N.J. Div. of Youth &

Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "[T]erminations should be granted sparingly and with great caution because they irretrievably impair imperative constitutionally-protected liberty interests and scores of centuries of societal family constructs." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014). However, a parent's rights are not absolute. Ibid. "Because of its parens patriae responsibility, the State may terminate parental rights if the child is at risk of serious physical or emotional harm or when necessary to protect the child's best interests." Id. at 553-54 (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986)).

In order for the court to terminate parental rights, the Division must satisfy the following four prongs of the "best interests of the child" test by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a)(1)-(4).]

The four prongs are not independent of one another. Rather, they "are interrelated and overlapping[,] . . . designed to identify and assess what may be necessary to promote and protect the best interests of the child." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006). Parental fitness is the crucial issue. K.H.O., 161 N.J. at 348. Determinations of parental fitness are very fact sensitive and require specific evidence. Ibid. Ultimately, "the purpose of termination is always to effectuate the best interests of the child, not the punishment of the parent." Id. at 350.

Our appellate review of Judge Miller's decision is limited. R.G., 217 N.J. at 552. We are bound to accept his factual findings, as long as they are "supported by adequate, substantial, and credible evidence." Ibid. (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). Additionally, we accord his decision particular deference "[b]ecause of the family courts' special jurisdiction and expertise in family matters," and because the judge was

8

uniquely in a position to evaluate the credibility of the witnesses. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). However, we review the trial court's legal interpretations de novo. R.G., 217 N.J. at 552.

Having reviewed the record in light of those legal standards, we conclude Judge Miller's factual findings are supported by substantial credible evidence in the record, and the legal conclusions drawn therefrom are indisputable. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). Consequently, we are obligated to defer to his findings. Ibid. We therefore affirm substantially for the reasons expressed by the judge in his well-reasoned opinion. We add the following comments, addressing those arguments that are pertinent to this appeal.

## A.

We first consider defendant's overlapping arguments that the judge's findings were insufficient to establish the first and second prongs of the best interests test. In particular, defendant contends, as a matter of law, that he did not cause L.J.B. actual harm. Rather, defendant blames S.E.H.'s substance abuse and lack of prenatal care for L.J.B.'s resulting disabilities. Defendant further claims he availed himself of services, even while incarcerated, but Dr. Lee did not consider the records relating to those services.

Defendant's focus on the "actual harm" component of prong one is misplaced. It is well settled that the Division need not demonstrate actual harm to satisfy prong one. N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 439-40 (App. Div. 2001). The focus under the first prong is not on any "single or isolated harm," but rather on "the effect of harms arising from the parent-child relationship over time on the child's health and development." K.H.O., 161 N.J. at 348 (citing A.W., 103 N.J. at 604-10). The harm may be established by "a delay in establishing a stable and permanent home." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999).

In this case, it is indisputable that L.J.B. sustained actual harm as a direct result of S.E.H.'s prenatal substance ingestion. See N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 22 (2013) (recognizing "proof that a child is suffering from withdrawal symptoms at birth could establish actual harm"). Indeed, L.J.B. remained in the NICU for fifty-four days following his birth, and suffers from "severe disabilities."

Of course, defendant did not give birth to L.J.B. Nonetheless, as the judge aptly recognized, defendant abused drugs alongside S.E.H. during her pregnancy, and he failed to insure that S.E.H. received prenatal care. Although the judge credited defendant's undisputed attempts to regain sobriety and avail

10

himself of services, the judge cited defendant's "history of repeating criminal behavior," his "history of repeating substance abuse[,]" his lack of "any meaningful history of employment stability[,]" and his lack of "any meaningful history of housing stability."

The record underscores the judge's findings. For example, despite the Division's continued prompting, defendant refused to seek employment, pending reunification with L.J.B. Further, Dr. Lee's evaluation of defendant indicates he

> is psychologically less mature and less developed than most adults, with a heightened level of anger and resentment, impulsive and reckless style, and self-centered tendencies. He is prone to ongoing instabilities in his life and situation, with a heightened risk for criminal recidivism and substance abuse relapse. His knowledge of parenting and childrearing are rather limited. His prognosis for significant and lasting changes is poor.

Moreover, L.J.B. has never been in defendant's custody and defendant will remain incarcerated at least until 2020 or 2021. See In re Adoption of Children by L.A.S., 134 N.J. 127, 143 (1993) ("performance as a parent before incarceration" is a factor to consider when determining whether an incarceration would support termination of parental rights); see also R.G., 217 N.J. at 554-55 (alteration in original) (while incarceration is not dispositive, it is "probative of whether the parent is incapable of properly caring for . . . or has abandoned the

11

child"). Referencing Dr. Lee's evaluation, the judge recognized defendant will "need at least [twelve] months of services" after he is released from prison. Further, L.J.B. requires specialized care, including frequent feedings and medical appointments. In fact, L.J.B.'s frail condition prevented visitation at the jail.

Conversely, L.J.B.'s continued placement with D.M. and R.S. is in the child's best interests. R.S. and D.M. have stable housing and steady sources of income. D.M. is gainfully employed as a NICU nurse and is therefore qualified to address the child's special needs. R.S. is a retired firefighter, who receives a pension and cares for L.J.B. full-time. According to the bonding evaluations performed by Dr. Lee, L.J.B. would suffer irreparable harm if he were removed from D.M. and R.S. See F.M., 211 N.J. at 451.

Assuming arguendo that Dr. Lee did not review records regarding services defendant received in jail, defendant nonetheless failed to rebut Dr. Lee's testimony that defendant's prognosis was poor and he was unable to safely parent L.J.B., a special needs child. Rather, the evidence overwhelmingly supports the judge's conclusion that defendant does not have the "housing," "income," or "skill set" to care for L.J.B., who will continuously reside with R.S. and D.M., with whom he is bonded, for four to five years before defendant is released from

12

prison. Defendant will then need another year of services before he even can be considered for placement. We agree with the judge that L.J.B.'s permanency should not hang in the balance unless and until defendant is able to provide the child with a safe and stable home.

In sum, we discern no error in the judge's determination that the Division satisfied the first and second prongs of the best interest test by clear and convincing evidence. The record supports the judge's findings.

B.

Turning to the third prong, defendant claims the Division failed to provide him with recommended psychotherapy; the court improperly suspended visitation without conducting a plenary hearing; the record does not indicate the Division informed D.M. and R.S. of the difference between kinship legal guardian (KLG) and adoption; and the trial judge failed to consider alternatives to the termination of his parental rights. We disagree.

Initially, defendant does not dispute that the Division offered him an array of services. Rather, he claims that because he was not afforded individual psychotherapy, as recommended by the Division's psychologist, the Division "derailed his efforts to fully rehabilitate himself," preventing him from gaining custody of L.J.B. However, "parents always can argue that [the Division] should

have done more . . . ." M.M., 189 N.J. at 286. The Division need not be perfect in its services offered, but only reasonable and acting within the child's best interests. Ibid.

Instead of referring defendant to individual psychotherapy, the Division referred him to individual counseling, but defendant failed to complete that service. As the judge accurately observed, despite the "myriad of services" provided by the Division, defendant was incarcerated following his burglary conviction. See R.G. 217 N.J. at 557 (recognizing the Division is "necessarily impeded by the difficulty and possible futility of providing services to an incarcerated person").

Secondly, following defendant's incarceration, the court suspended visitation based on the written recommendations of two of L.J.B.'s treating physicians. Because there were no genuinely disputed issues concerning the child's fragile health, we agree with the trial judge that a plenary hearing was unnecessary to determine whether visitation was appropriate in prison. See P.T. v. M.S., 325 N.J. Super. 193, 214 (App. Div. 1999); see also Hand v. Hand, 391 N.J. Super. 102, 105-06 (App. Div. 2007) (holding that a plenary hearing is not required in every contested proceeding). Given the circumstances, it was not unreasonable for the judge to deny defendant's request for visitation while he

was incarcerated especially where, as here, Dr. Lee observed L.J.B. has "an ambivalent and insecure attachment with [defendant]."

We next consider defendant's contention that D.M. and R.S. were not adequately informed of the difference between KLG and adoption. Our Supreme Court has recognized that KLG is "not meant to be a substitute for the permanency of adoption but, rather, to provide as much permanency as possible when adoption is not feasible or likely and a relative is willing to care for the child . . . ." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 510 (2004). Where adoption is feasible or likely, there is "no need to determine whether KLG was in the best interest of" the child. N.J. Div. of Youth & Family Servs. v. T.I., 423 N.J. Super. 127, 137 (App. Div. 2011). We have found adoption appropriate, rather than KLG, where the child has been in the custody of the caretaker for quite some time, the caretaker is committed to adoption, and the differences between KLG and adoption have been explained. See id. at 136.

Here, the record demonstrates that five months after L.J.B. was placed with his maternal great aunt and her paramour, a Division worker explained to R.S. the difference between KLG and adoption, provided documents explaining the differences in greater detail, and indicated "if the case gets transferred to [the] adoption [unit]," she would again review the distinction with D.M. and

R.S. "before they ma[d]e a final decision." Although D.M. was not at home during the worker's visit with R.S., D.M. clearly stated her intention to adopt L.J.B. during the bonding evaluation conducted by Dr. Lee one year later, i.e., she "wishes . . . to adopt the child if [he is] legally free." Because adoption was "feasible" and "likely" KLG was not in L.J.B.'s best interests. Id. at 137.

Finally, defendant's claim that the judge failed to properly consider other alternatives to termination is belied by the record. The Division explored several options for placing L.J.B. with maternal or paternal relatives. For example, the Division considered defendant's parents, E.B. and G.B., but they were ruled out soon after L.J.B. was placed in foster care due to their prior Division history, domestic violence, allegations of sexual abuse by G.B., and insufficient living space in their one-bedroom apartment.

Nonetheless, prior to the start of the guardianship trial, Judge Miller conducted a custody hearing regarding a complaint filed by E.B. nearly one year after her initial application for placement was denied. E.B. testified that she had physical disabilities that prevented her from lifting anything more than twenty-five pounds, and G.B. also was disabled. She acknowledged she was unfamiliar with L.J.B.'s disabilities and special needs. Before defendant was incarcerated,

16

E.B. saw L.J.B. a few times per week, but she had not seen the child in nearly one year. If she were awarded custody, she would move to a larger apartment.

At the conclusion of E.B.'s testimony, the judge denied E.B.'s petition, citing her limited relationship with the child, and her unfamiliarity with L.J.B.'s "severe" health issues. The judge also noted L.J.B. had been in the care of D.M., a pediatric nurse, for seventeen months. Accordingly, the judge determined uprooting L.J.B. from D.M.'s care to E.B.'s care would not be in the best interests of the child.

Further, S.E.H.'s grandparents were considered together, and her grandmother was again considered separately after her grandfather moved out of their trailer home. Ultimately S.E.H.'s grandmother was ruled out because of her "finances and the state of her house." The Division also considered, but ruled out, S.E.H.'s cousin because her paramour had pending theft charges.

We are therefore satisfied that the record supports the judge's determination that the Division satisfied the third prong of the best interests test.

Defendant's remaining contentions, to the extent they have not been addressed, are without sufficient merit to warrant further discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4434-17T2